[ECF No. 81]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **RICHARD F. VETTER et al.,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **RUSTOLEUM CORPORATION,** <br><br> **Defendant.** | Civil No. 21-17397 (CPO/SAK) |

## OPINION AND ORDER

This matter is before the Court by way of the Motion for Sanctions [ECF No. 81] filed by Defendant Rustoleum Corporation. Defendant seeks an order awarding it reasonable expenses and attorneys' fees against Plaintiffs' counsel and expert as a sanction for their alleged violations of the Discovery Confidentiality Order ("DCO") [ECF No. 16]. The Court received the opposition of Plaintiffs Richard F. Vetter and Bryan Miner (collectively, "Plaintiffs") [ECF No. 83], and Defendant's reply [ECF No. 86]. The Court exercises its discretion to decide the motion without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, Defendant's motion is **GRANTED** in part and **DENIED** in part.

I.   **BACKGROUND**

Plaintiffs filed this products liability action on September 23, 2021 asserting three counts against Defendant. *See* Compl. [ECF No. 1]. Specifically, Plaintiffs assert claims of strict liability, negligence, and breach of implied warranty. *See id.* ¶¶ 12–42. Plaintiffs' claims arise out of a fire occurring on March 9, 2021, resulting in extensive damage to Plaintiffs' real and personal property. *See id.* ¶¶ 8, 9. As part of renovations prior to moving into the subject property, Plaintiffs bought

Defendant's Varathane Classic Wood Stain to stain their floors. *See id.* ¶¶ 5, 6. After applying the product and leaving the application materials saturated with the product in a pile at the subject property, a fire erupted. *See id.* ¶¶ 6–8. In brief, Plaintiffs allege that the fire was caused by spontaneous combustion of the application materials saturated with the product. *See id.* ¶ 10. Plaintiffs' claims are all premised on the theory of design defect.[1] Defendant denies the substance of the allegations and asserts numerous affirmative defenses in response. *See* ECF No. 4.

At the outset of the litigation, the parties agreed to the terms of a DCO. The Court signed and entered the order on February 4, 2022. *See* DCO. The DCO reads in relevant part:

> 3. All Confidential material shall be used by the receiving party **solely for purposes of the prosecution or defense of this action**, shall not be used by the receiving party for any . . . other purpose, and shall not be disclosed by the receiving party to anyone other than those set forth in Paragraph 4, unless and until the restrictions herein are removed either by written agreement of counsel for the parties, or by Order of the Court. . . .
>
> 4. Confidential material and the contents of Confidential material may be disclosed only to the following individuals under the following conditions:
>
> . . . .
>
> > b. Outside experts or consultants retained by outside counsel for purposes of this action, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A.

*Id.* ¶¶ 3, 4 (emphasis added); *see id.*, Ex. A, ¶ 6 (emphasis added) (requiring the signatory to "limit use of Confidential Material disclosed to [them] **solely for purpose of this action**").

At issue now is a document containing the formula for one of Defendant's products, Varathane Classic Water-Based Wood Stain (the "Formula"). *See* Def.'s Mem. at 2 [ECF No. 81-1]. Defendant produced this document in discovery and designated it as "Confidential – Attorneys'

---

[1] Plaintiffs' claims were initially premised on both the theories of failure to warn and design defect. However, the claims premised on the theory of failure to warn did not survive summary judgment and have since been dismissed. *See* ECF Nos. 92, 93.

2

Eyes Only" under the DCO, because "the Formula is a highly sensitive trade secret." *Id.* After disclosing the Formula to Plaintiffs, Plaintiffs' counsel—on behalf of another plaintiff in a Virginia state court action—served a rebuttal expert report containing references to the Formula. *See id.*; *see also Sale v. Rustoleum Corp.*, No. 2021-14497 (Va. Cir. Ct.). The expert report included the Formula's "specific composition" and counsel "listed the Formula as one of its trial exhibits." Def.'s Mem. at 2–3. Notably, the expert report was authored by Plaintiffs' expert in this action, Jennifer T. Morningstar, P.E., CFEI. Most notably, however, the Formula was neither produced nor requested in the *Sale* action. *See id.* at 3; Silverman Decl., Ex. D at 1 [ECF No. 82-4].

Defendant now seeks sanctions in connection with Plaintiffs' counsel's and their expert's use of the Formula in the *Sale* action. The parties do not dispute the facts underlying Defendant's motion. The crux of the issue hinges on whether use of the Formula in the *Sale* action was a violation of the DCO in this action. Defendant asserts that it indisputably was. Plaintiffs maintain otherwise. Promptly after learning that the Formula was being used in *Sale*, Defendant "demanded assurance from [counsel's law firm] that the firm and Ms. Morningstar would cease relying upon the Formula in *Sale*." Def.'s Mem. at 3 (citing Silverman Decl. ¶ 5, Ex. D). Plaintiffs' counsel promptly replied and "doubled down, claiming that the DCO had not been violated." *Id.* (Silverman Decl., Ex. E). In particular, he argued that "Ms. Morningstar cannot 'forget' and need not 'destroy' the Formula," since the litigation is ongoing. *Id.*; *see* Silverman Decl., Ex. E, at 2. Defendant responded arguing "it was the use of the Formula in another litigation—not any failure to forget or destroy it—that violated the DCO." Def.'s Mem. at 3 (emphasis in original); *see* Silverman Decl., Ex. E, at 1.

In light of Plaintiffs' counsel's position, Defendant asserts that it was forced to file a motion *in limine* in *Sale* to preclude use of the Formula there. *See* Def.'s Mem. at 3. Since the trial in *Sale*

3

was scheduled to begin while the motion *in limine* was pending, Defendant further asserts that it was "compelled to expend significant time preparing to cross-examine Ms. Morningstar on her opinions concerning the Formula." *Id.* Plaintiffs' counsel chose not to oppose the motion *in limine* in *Sale*. "Instead, [he] wrote to this Court seeking its blessing to use the Formula in Virginia—in *Sale*." *Id.* (citing ECF No. 69). After the parties filed a series of letters on the docket, Plaintiffs' counsel informed the Court that the *Sale* action settled. *See* ECF Nos. 71–74. The Court then issued an order advising that it considered the issue to be moot and offering to revisit the issue upon request. *See* ECF No. 75. Defendant subsequently sought, and was granted, leave to file the instant motion. *See* ECF Nos. 79, 80.

Defendant argues that Plaintiffs' counsel and their expert "indisputably and unabashedly violated the DCO by using in *Sale* the Formula produced in this matter under the protections of the DCO, which expressly prohibited [its] use in another matter." Def.'s Mem. at 4. It also notes that "[t]his is not the first time [that Plaintiffs' counsel] has misused a product formula in violation of a protective order." *Id.* at 2; *see id.* at 4 n.2 (citing *Mains v. Sherwin-Williams Co.*, No. 20-112, 2022 WL 1443391 (E.D. Pa. May 6, 2022)). Under these circumstances, Defendant contends that sanctions are warranted. As such, Defendant seeks an order awarding it reasonable expenses and attorneys' fees against Plaintiffs' counsel and expert, respectively, as a sanction for their violations of the DCO.[2]

---

[2] Specifically, this includes expenses and fees incurred in: (1) demanding that the violations cease; (2) moving *in limine* in *Sale* to preclude use of the Formula; (3) responding to multiple letters filed by Plaintiffs in this action relating to Defendant's motion *in limine* in *Sale*; (4) preparing to cross-examine Ms. Morningstar on her opinions in *Sale* regarding the Formula; and (5) seeking leave to make and file the instant motion. *See id.* at 9.

4

Plaintiffs oppose Defendant's motion on various grounds.[3] First, Plaintiffs take issue with the focus of Defendant's motion. *See* Pls.' Opp'n at 1. Plaintiffs assert that Defendant's stance on the issue "has changed drastically" since Defendant first raised it in its motion *in limine* in *Sale*. *Id.* In brief, Defendant initially objected to Plaintiffs' misuse of two product formulas—both the oil-based and water-based wood stain formulas, the latter of which is the subject of this motion. *See id.* at 1–2. Since Plaintiffs are alleging that the oil-based product is defective and unreasonably dangerous, they take particular issue with Defendant's focus on the water-based product formula. Simultaneously, Plaintiffs' counsel concedes that, in this and similar cases, his law firm attempts to submit the water-based formula as a reasonably safe alternative. *See id.* at 2–3.

Plaintiffs concede the Formula was not requested or produced in *Sale*. *See id.* at 4. They note that Ms. Morningstar's initial expert report discussed water-based stain products generally without any reference to it. *See id.* Only in a rebuttal report did she use the Formula. *See id.* at 6. Plaintiffs admit this much but then attempt to diminish the significance of this fact. *See id.* (stating she "simply used numbers from" the Formula "to make an exemplar point about all water-based stains generally"); *see also id.* at 11 ("Ms. Morningstar simply used Defendant's own water-based stain formula to prove a point she had made about water-based stains generally in her . . . expert report."). Plaintiffs assert that they had no intent of using the Formula at trial. *See id.* at 7. They also assert that they never publicly disclosed it. *See id.* at 11. Next, Plaintiffs seek to distinguish the cases relied on by Defendant to argue that their use of the Formula did not violate the DCO.

---

[3] Plaintiffs' counsel appears to attempt to deflect personal accountability for the conduct at issue. *See* Pls.' Opp'n at 3 n.2 (citing Levine Decl. ¶ 28) (claiming "Plaintiffs' counsel was not involved in [*Sale*] until he filed a motion for *pro hac vice* admission to assist at trial, such filing being made July 25, 2023). The Court notes that Ms. Morningstar's rebuttal report is dated July 7, 2023, and thus, predates counsel's admission. Nevertheless, the alleged misconduct underlying Defendant's motion, but for Ms. Morningstar's reliance on the Formula in her rebuttal report, entirely postdates counsel's admission. Accordingly, the Court finds this curious anecdote of no relevance.

*See id.* at 12–16.  They further argue that, while "Defendant does not employ the word 'contempt' in its motion, that is exactly what it is seeking by claiming a violation of a court order." *Id.* at 12.  As such, Plaintiffs argue that sanctions are not warranted, and that the motion must be denied.

In its reply, Defendant emphasizes that Plaintiffs acknowledge that counsel and their expert "used the Formula in the *Sale* litigation, even though it 'was not requested or produced' there." Def.'s Reply at 1 (quoting Pls.' Opp'n at 4).  Defendant maintains that, despite claiming otherwise, Plaintiffs "violated the express terms of the DCO." *Id.*  It contends that lack of public disclosure or dissemination, or the incidental or *de minimis* nature of the use of the Formula, is not relevant. *See id.* at 1–4.  This notwithstanding, Defendant contends that Plaintiffs' use of the Formula was not incidental, but an intentional, deliberate response to its expert's claim that Ms. Morningstar failed to provide any scientific evidence in support of her initial expert report and the opinions contained therein. *See id.* at 3.  Defendant accuses Plaintiffs' counsel of intentionally conflating the applicable law governing its motion by referring to the sanctions sought, and relying upon case law concerning, a finding of contempt—which requires a far higher burden. *See id.* at 4–5.  In sum, Defendant contends that Plaintiffs' position is without merit and wholly detached from the facts and applicable law.

## II.  DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure 37(b)(2)(A) provides, in pertinent part, that a district court may issue sanctions against a party that "fails to obey an order to provide or permit discovery." "Discovery orders that can be enforced through Rule 37(b) include protective orders issued under [Rule] 26(c)." *Jazz Pharms., Inc. v. Amneal Pharms. LLC*, No. 13-391, 2016 WL 11480203, at *3 (D.N.J. Jan. 22, 2016) (citation omitted).  In this District, Local Civil Rule 5.3(b) permits parties

to enter into protective orders pertaining to discovery. Rule 37(b)(2)(A) provides that the court "may issue further just orders." Although this rule also proceeds to list seven potential sanctions, this list is not exhaustive. *See Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018) (noting a court "may depart from the list of sanctions expressly endorsed by the rule"). "Rule 37 sanctions are available to the district court 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006) (quoting *Nat'l Hockey Leave v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)). Although courts have broad discretion as to the "type and degree of sanctions it can impose," the sanctions imposed "must be just and related to the claims at issue." *Id.* (citations omitted).

Instead of or in addition to such sanctions, Rule 37(b)(2)(C) requires the court to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See, e.g.*, *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 249 (3d Cir. 2014) (citing FED. R. CIV. P. 37(b)(2)(C)) (noting that this provision is mandatory and not permissive); *see also Engage Healthcare Commc'ns, LLC. v. Intellisphere, LLC.*, No. 12-787, 2019 WL 7640295 (D.N.J. Jan. 23, 2019) (citing FED. R. CIV. P. 37(b)(2)(C)) (awarding movants reasonable expenses and attorneys' fees incurred in connection with the DCO violations that gave rise to their motion); *Antonious v. Nike, Inc.*, No. 11-06327, 2016 WL 844840 (D.N.J. Mar. 2, 2016) (awarding reasonable expenses and fees incurred as a result of the plaintiff's DCO violations).

### B. Analysis

Defendant maintains that use of the Formula in the *Sale* action by Plaintiffs' counsel and their expert was a direct violation of the express terms of the DCO in this action. The Court agrees. The DCO clearly and unequivocally prohibits its use for any purpose beyond the prosecution or defense of this action. Accordingly, the Court finds that the requested award of expenses and fees caused by their failure to obey the DCO is required by Rule 37(b)(2)(C)—but only as it pertains to Plaintiffs' counsel. For the reasons that follow, the Court will deny Defendant's motion as to Ms. Morningstar and grant the motion as to Plaintiffs' counsel.

At the outset, the Court must note that Defendant's motion does not seek sanctions. Rather, Defendant seeks the required recoupment of expenses and attorneys' fees caused by sanctionable conduct pursuant to Rule 37(b)(2)(C). As Defendant explains in its motion, while "it believes that [counsel's] and Ms. Morningstar's conduct rise to the level of contempt, [Defendant] is not seeking to hold them in contempt" Def.'s Memo. at 8 n.4. Nor is it seeking any other form of sanction pursuant to Rule 37(b)(2)(A). Nevertheless, it need not. The failure of Plaintiffs' counsel and expert to obey the DCO is a sanctionable offense under Rule 37(b)(2)(A). While the relief sought by Defendant is required by Rule 37(b)(2)(C), the rule specifically provides that it may be ordered "[i]nstead of or in addition to" any other orders issued pursuant to Rule 37(b)(2)(A).[4] Therefore, if the DCO was violated, the Court must grant the relief as to Plaintiffs' counsel.

Here, the Court finds Plaintiffs' counsel's use of the Formula in *Sale* was unquestionably a violation of the DCO. It is simply hard to fathom how Plaintiffs' counsel can conclude otherwise. *See* DCO ¶ 3 (emphasis added) ("All Confidential material shall be used by the receiving party

---

[4] The Court notes, however, that Rule 37(b)(2)(C) only requires payment by "the disobedient party, the attorney advising that party, or both." Defendant provides no basis for its request for expenses and fees from Plaintiffs' expert. Therefore, the Court will deny the motion as to Ms. Morningstar.

8

**solely for purposes of the prosecution or defense of this action**, [and] shall not be used by the receiving party for **any** . . . **other purpose**."). The Court finds that the plain language of the terms of the DCO speaks for itself. Likewise, the agreement that Plaintiffs' expert executed expressly required her to limit her use of such material "**solely for purpose of this action**." *Id.*, Ex. A, ¶ 6 (emphasis added). Thus, Plaintiffs' expert, Ms. Morningstar, violated the terms of that agreement when she employed the Formula in her rebuttal expert report in *Sale*. Plaintiffs' counsel claims that Ms. Morningstar used but did not rely on the Formula in her report. *See* Pls.' Opp'n at 6–7. This is a distinction without a difference. Regardless, counsel contradicts his claim when he states: "Ms. Morningstar simply used Defendant's own water-based stain formula to prove a point she had made about water-based stains generally in her . . . expert report." *Id.* at 11.

Having found that Plaintiffs' counsel and his expert failed to obey the DCO, the Court must order counsel to pay the reasonable expenses and fees caused by their failure to obey the order.[5] The Court, therefore, will grant Defendant leave to submit an application detailing the reasonable expenses and attorneys' fees caused by the violation of the DCO. However, the Court would be remiss if it did not briefly address how Plaintiffs' counsel's conduct is likely responsible for most, if not all, of the costs and fees it caused.

The initial violation could have easily been cured or corrected when Plaintiffs' counsel was provided notice of it by Defendant. *See* Silverman Decl. ¶ 5, Ex. D. It was not. Instead, Plaintiffs' counsel insisted the use was proper and refused to concede the violation occurred or to cease from further violations. *See id.* ¶¶ 5, 6, Ex. E. As a result, Defendant was compelled to file a last-minute

---

[5] The Court is only requiring that Plaintiffs' counsel pay reasonable expenses and fees associated with the failure to obey the DCO. Neither party has provided a basis, nor even suggested, that his clients took part in the violation giving rise to the sanctionable conduct. Therefore, the Court will only hold counsel accountable.

9

motion *in limine* in *Sale*, with trial imminent. It also had to prepare for all possible contingencies, compelling Defendant to prepare for a cross-examination of Ms. Morningstar on her opinions regarding the Formula. Compounding the matter—and the costs caused by the violation—further, Plaintiffs' counsel opted not to oppose the motion *in limine* in *Sale*. Surprisingly, he wrote to this Court, causing Defendant to fight to protect its trade secret on two fronts and to incur additional, unnecessary expenses. Ultimately, the *Sale* action settled. Counsel's dispute over the violation, however, was not resolved. Consequently, Defendant was forced to file the instant motion in an effort to curb potential future violations. As Defendant aptly put it, "the vast majority" of the expenses it incurred "would have been avoided" had Plaintiffs' counsel "simply agreed to cease and desist violating the DCO when [it] first raised the violation." Def.'s Reply at 5. To be clear, this is but a terse recitation of the events that unfolded as a result of the violation.

### III. CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **23rd** day of **February**, **2024**, that Defendant's Motion for Sanctions [ECF No. 81] is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that, insofar as Defendant seeks an award of reasonable expenses, including attorneys' fees, against Plaintiffs' expert, the motion is **DENIED**; and it is further

**ORDERED** that, insofar as Defendant seeks an award of reasonable expenses, including attorneys' fees, against Plaintiffs' counsel, the motion is **GRANTED**; and it is further

**ORDERED** that Defendant shall be awarded reasonable expenses, including attorneys' fees, caused by Plaintiffs' counsel's and their expert's failure to obey the DCO; and it is further

**ORDERED** that Defendant is granted leave to submit an application by **March 25, 2024**, setting forth**,** with appropriate documentation and evidence, its calculation of reasonable expenses and attorneys' fees to which it contends it is entitled as a result of the violation.

s/ Sharon A. King  
SHARON A. KING  
United States Magistrate Judge

cc:  Hon. Christine P. O'Hearn, U.S.D.J.